# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**Michael McKinney,**

**Plaintiff,**

v.                                                    Case No. 16-cv-2754-JWL

**Kansas City Automotive Company**
**Limited Partnership d/b/a Hendrick Lexus**
**Kansas City,**

**Defendant.**

## <u>MEMORANDUM & ORDER</u>

Plaintiff and his wife, Katherine McKinney, who is not a party to this lawsuit, are both former employees of defendant. Defendant terminated Ms. McKinney in January 2015 and, in May 2015, Ms. McKinney filed a charge of discrimination alleging sex discrimination and retaliation. Plaintiff was still employed by defendant at that time. In late October 2015, plaintiff participated in defendant's investigation into the allegations contained in Ms. McKinney's charge of discrimination. Less than six weeks later, defendant terminated plaintiff's employment.

Plaintiff filed this lawsuit against defendant asserting two distinct theories of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. First, plaintiff contends that defendant terminated his employment in retaliation for plaintiff's engaging in protected activity—namely, plaintiff's participation in the investigation of his wife's charge and/or his opposition to discrimination against his wife. Second, plaintiff contends that defendant terminated his employment in retaliation for Ms. McKinney's filing a charge of discrimination. This matter

is presently before the court on defendant's motion for summary judgment (doc. 47).  As will be explained, the motion is denied.

## I.      Facts

The following facts are uncontroverted, stipulated in the pretrial order, or related in the light most favorable to plaintiff as the nonmoving party.  Defendant Kansas City Automobile Company Limited Partnership operates as a retail automobile dealership doing business as Hendrick Lexus Kansas City.  Plaintiff Michael McKinney began his employment with the defendant in May 2001 at its dealership location in Merriam, Kansas.  At some point, plaintiff began working as one of two Pre-Owned Sales Managers and he remained in that position throughout 2015, until the termination of his employment in December 2015.  Plaintiff's wife, Katherine McKinney, began her employment with defendant in approximately 1995.  Most recently, Ms. McKinney was employed as a Finance Manager at the Merriam dealership until her employment was terminated in early January 2015.  Phil Humbert was defendant's General Manager from December 2000 until the termination of his employment on September 30, 2015.

Mr. Humbert terminated Ms. McKinney's employment in January 2015.  At that time, Ms. McKinney began working at Bob Allen Ford, another dealership in the Kansas City area.  In May 2015, defendant received notice that Ms. McKinney had filed a charge of discrimination alleging, among other things, that defendant (and, more specifically, Mr. Humbert) had terminated her employment because of her pregnancy and in retaliation for exercising her rights under the FMLA. In late October 2015, a mediation of Ms. McKinney's charge was held at the EEOC's Kansas

City, Kansas office.[1]  Ms. McKinney was represented by counsel and defendant was represented by outside counsel and Jenny Mann, a Human Resources manager employed by Hendrick Automotive Group, a company that provides various management services to defendant.  The mediation did not resolve Ms. McKinney's charge and, after the mediation session, Ms. Mann went to the Merriam dealership to meet with witnesses whom she believed might have information relevant to Ms. McKinney's charge.

As part of her investigation into Ms. McKinney's claims against the dealership, Ms. Mann met with plaintiff.  During that interview, plaintiff told Ms. Mann that he had heard that Mr. Humbert had referred to his wife as a "bitch" and had said that he was going to "fire that bitch" when she returned from maternity leave.  Plaintiff advised Ms. Mann that he believed his wife had been fired unjustly and he expressed how upset he was that his wife was singled out during a managers' meeting on the day of her discharge and told to "sit the fuck down."  As plaintiff continued to tell Ms. Mann how he felt about the termination of his wife's employment, he became emotional and started to tear up.  Ms. Mann then told him that was "enough," and ended the meeting.

Around this same time, Ms. McKinney purchased a new Ford Explorer from Bob Allen Ford, her employer, and traded in her 2015 Lexus RX 350, a transaction that began in August or September 2015 when Ms. McKinney placed an order through Bob Allen Ford to build a Ford Explorer with the specific options she wanted.  As a Pre-Owned Sales Manager, plaintiff had the

---

[1] The parties dispute whether defendant terminated Mr. Humbert's employment based on the allegations in Ms. McKinney's charge.  Plaintiff suggests that Ms. McKinney's allegations caused Mr. Humbert to lose his job and defendant contends that it terminated Mr. Humbert's employment in light of the dealership's declining profitability.

authority to buy, sell, and price used vehicles and trade-ins, from both customers and other dealerships. In September 2015, plaintiff, on defendant's behalf, submitted a buy bid to Bob Allen Ford for the vehicle that his wife planned to trade in when her Explorer was ready. Plaintiff testified that he sought and received approval from Mr. Humbert, who was still employed at that time, prior to submitting the bid.[2] It is uncontroverted that plaintiff discussed the buy bid with Brian Exposito, the dealership's other Pre-Owned Sales Manager, who agreed with plaintiff that the price plaintiff suggested for the vehicle ($45,000) was the appropriate price for the vehicle. Bob Allen accepted the offer.

Ms. McKinney accepted delivery of her new Explorer on October 31, 2015. The Lexus that she had traded in to Bob Allen Ford came into defendant's inventory on November 6, 2015 and plaintiff completed a Pre-Owned Worksheet at that time, indicating that the vehicle had been obtained from Bob Allen Ford. Plaintiff assigned a stock number to the vehicle, placed it on the showroom floor and made it available for sale. Plaintiff also advised the sales staff that the RX350 that he had purchased from Bob Allen Ford was his wife's former Lexus and was on the lot as new inventory.

On December 2, 2015, plaintiff learned that Bob Allen Ford was ready to deliver the title to the RX350 to the dealership. On that same day, plaintiff submitted a check request to pay for the vehicle so that he could have the check ready when the title was delivered. When the

---

[2] Company policy required plaintiff to obtain approval of the transaction if his interests might conflict with the dealership's interests. Plaintiff contends that no conflict exists in this circumstance because the vehicle no longer belonged to his wife but that he sought approval from Mr. Humbert out of an abundance of caution. Defendant contends that approval was required and a conflict existed because the amount that plaintiff offered for the car set the trade-in value for the car, which offset the purchase price of the new car purchased by plaintiff's wife.

4

dealership's office manager presented Nick Karras, the General Manager who replaced Mr. Humbert in early October 2015, with the check for his signature, she advised him that plaintiff needed the check "immediately" and wanted the check hand-delivered to Bob Allen Ford that same day.

Mr. Karras testified that the check request raised a "red flag" in his mind because the purchase order for the vehicle was dated November 6, 2015, but the check request was being processed nearly a month later and was a "hand-delivery" request—all of which he considered atypical. It is undisputed that Mr. Karras was also concerned about the price that the dealership was paying for the vehicle and that he believed the price was roughly $5000 higher than what the vehicle was worth. Mr. Karras called plaintiff and asked whether plaintiff "had too much in an RX350" that plaintiff had purchased for the dealership and whether the car had been priced correctly. In response, plaintiff advised Mr. Karras that he was comfortable with the price, that the dealership needed RXs, and that he could sell it. Plaintiff did not advise Mr. Karras that the vehicle was his wife's former vehicle because, according to plaintiff, he did not realize that Mr. Karras was talking about that particular vehicle. Mr. Karras signed the check.

Later that afternoon, on December 2, 2015, Mr. Karras saw the title to the vehicle and realized that Ms. McKinney's name was on the title as the registered lessee. He also learned at that time that Ms. McKinney was working at Bob Allen Ford as the Finance Manager. Mr. Karras called plaintiff again and asked him why he had not mentioned to Mr. Karras during their previous conversation that the vehicle belonged to his wife and whether anyone else knew about the car being purchased from Bob Allen Ford. Plaintiff told Mr. Karras that Mr. Humbert had given plaintiff approval to purchase the vehicle.

The following day, December 3, 2015, Mr. Karras notified Ms. Mann that he was suspending plaintiff "from working on any transactions as he is manipulating our profitability." He then called Mr. Humbert to ask whether he had approved the purchase of the vehicle. Mr. Humbert denied knowing anything about the transaction. Mr. Karras shared that discussion with Ms. Mann, who told Mr. Karras to obtain written confirmation from Mr. Humbert that he had not authorized the transaction. Mr. Humbert sent an email to Mr. Karras confirming that he had no knowledge of the transaction. On the evening of December 3, 2015, Mr. Karras sent an email to Ms. Mann requesting that defendant terminate plaintiff's employment in light of the fact that plaintiff was "deceptive" and exercised poor judgment that impacted the profitability of the dealership.

On Friday, December 4, 2015, Mr. Karras met with plaintiff and advised him that he was suspending plaintiff for purchasing the RX350 because plaintiff did "not have a form signed." Plaintiff testified that he asked Mr. Karras several times what form he meant because he had no knowledge of any form that was required. According to plaintiff, Mr. Karras did not elaborate but suspended plaintiff. When plaintiff asked whether defendant intended to terminate his employment, Mr. Karras advised him that he would get back to him. On Monday, December 7, 2015, Mr. Karras met with plaintiff and terminated his employment after consultation with Ms. Mann and John Desmond, the Market Vice President for Hendrick Automotive Group. It is uncontroverted that Mr. Karras at that time knew that Ms. McKinney had filed a charge of discrimination against the dealership and that plaintiff had participated in Ms. Mann's investigation into Ms. McKinney's charge.

In late December 2015, Mr. Karras personally authorized a discount for Mr. Humbert to purchase a new Lexus from the dealership and Mr. Humbert traveled to Kansas City from Florida to take advantage of Mr. Karras' offer.  Thereafter, Mr. Humbert texted his appreciation to Mr. Karras, who responded by text:

> My pleasure.
> Got to take care of our fellow Lexus guys
> right

Mr. Karras testified that the discount was given to Mr. Humbert based on a prior agreement that Mr. Humbert had with the dealership that did not involve Mr. Karras.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II.    Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc*., 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a).  A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc*., 726 F.3d at 1143 (quotation omitted).  "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id*. at 1143-44.

7

### III.    Retaliation Claim

In the pretrial order, plaintiff asserts that defendant, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., terminated his employment in retaliation for plaintiff's protected activity and/or in retaliation for his wife's protected activity. *See Thompson v. North American Stainless, LP*, 562 U.S. 170 (2011) (a plaintiff may assert a retaliation claim based on the protected activity of a close family member). As plaintiff has no direct evidence of discrimination, his claim is analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012). To state a prima facie case for retaliation, plaintiff must show that (1) he or his spouse engaged in protected opposition to discrimination, (2) a reasonable worker would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action. *Id*.; *Thompson*, 562 U.S. at 174-75.[3] If plaintiff presents a prima facie case of retaliation, then defendant must respond with a legitimate, nonretaliatory reason for the challenged action. *Parker Excavating, Inc. v. Lafarge W., Inc*., 863 F.3d 1213, 1220 (10th Cir. 2017). If defendant satisfies this burden, plaintiff must show that defendant's reason was merely a pretext for retaliation. *Id*.

Defendant concedes that plaintiff has established a prima facie case of retaliation. The court turns, then, to whether defendant has met its burden to articulate a legitimate, nonretaliatory reason for the employment decision. "This burden is one of production, not persuasion; it can

---

[3] The Court in *Thompson* deemed it "obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her [spouse] would be fired." 562 U.S. at 174.

involve no credibility assessment." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). The Tenth Circuit has characterized this burden as "exceedingly light," and the court finds that defendant has carried it here. *See id.* According to defendant, it terminated plaintiff's employment because Mr. Karras perceived plaintiff as having been dishonest about whether he obtained prior approval before purchasing his wife's former car from Bob Allen Ford. The burden of proof, then, shifts back to plaintiff to show that defendant's proffered reason is pretextual.

Evidence of pretext "may take a variety of forms," including evidence tending to show "that the defendant's stated reason for the adverse employment action was false" and evidence tending to show "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Carter*, 662 F.3d at 1150 (quoting *Kendrick v. Penske Transp. Servs., Inc*, 220 F.3d 1220, 1230 (10th Cir. 2000)). A plaintiff may also show pretext with evidence that the defendant had "shifted rationales" or that it had treated similarly situated employees differently. *Crowe v. ADT Servs., Inc.*, 649 F.3d 1189, 1197 (10th Cir. 2011). Simply put, a plaintiff shows pretext by presenting evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *McDonald-Cuba v. Santa Fe Protective Servs., Inc.*, 644 F.3d 1096, 1102 (10th Cir. 2011).

After carefully considering the evidence in the record and the parties' submissions, the court concludes that the evidence, viewed in the light most favorable to plaintiff, is sufficient to

cast doubt on the reason proffered by defendant for terminating plaintiff's employment.  The court begins with the timing of plaintiff's termination.  As plaintiff highlights, his termination occurred just 6 weeks after he opposed his wife's discharge in connection with the investigation into her charge of discrimination.  While timing alone is not sufficient to raise a genuine issue of material fact concerning pretext, *Proctor v. United Parcel Serv*., 502 F.3d 1200, 1213 (10th Cir. 2007), plaintiff here has offered additional evidence that, when coupled with the timing of plaintiff's termination, sufficiently creates a triable issue of fact as to whether defendant's proffered reason is unworthy of belief.

As further evidence that defendant's reason is unworthy of belief, plaintiff highlights that defendant's reasons for terminating plaintiff have changed over time.  While defendant asserts that plaintiff's employment was terminated because Mr. Karras perceived him as dishonest about whether he had obtained prior approval for the purchase of his wife's former vehicle, the evidence viewed in plaintiff's favor reflects that defendant, on other occasions, has offered different reasons for plaintiff's termination, including plaintiff's failure to complete a form that, according to plaintiff, does not exist and was not required and plaintiff's negative impact on the dealership's profitability.  While those reasons are admittedly all related to the specific transaction that defendant asserts resulted in plaintiff's termination, they are sufficiently inconsistent such that a jury might reasonably reject them.  Finally, plaintiff's evidence concerning the discounted Lexus that Mr. Humbert (a former employee who had been discharged) received less than one month after verifying that he had not approved the purchase of Ms. McKinney's former vehicle is sufficiently unusual in the context of this case that it calls into question the credibility of both Mr.

Karras and Mr. Humbert on the key factual dispute in this case—whether Mr. Humbert approved plaintiff's purchase of the vehicle.

For the foregoing reasons, the court denies defendant's motion for summary judgment.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 47) is denied.

**IT IS SO ORDERED.**

Dated this 8th day of March, 2018, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

11